United States District Court
Southern District of Texas

**ENTERED**

April 25, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| BEATRIZ GARCIA, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION 4:16-CV-11 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## REPORT AND RECOMMENDATION
## ON THE UNITED STATES' MOTION TO DISMISS,
## OR FOR SUMMARY JUDGMENT

This is a medical negligence suit brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671 *et seq.* Currently pending before the court is the United States' Motion to Dismiss, or for Summary Judgment [Doc. #6]. Plaintiffs have filed a response opposing the motion [Doc. #8], and the United States has filed a reply [Doc. #9]. The motion was referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B) [Doc. #12]. Having considered the parties' filings and the applicable law, the Court **RECOMMENDS**, for the reasons set forth below, that the United States' motion be **DENIED**.

## BACKGROUND

Plaintiffs in this case are Beatriz Garcia ("Garcia"), who sues individually and as next friend and natural guardian of her two minor children, and her husband, Antonio Jimenez. According to their complaint, Garcia was admitted to St. Joseph Regional Health Center in Bryan, Texas on the night of March 27, 2013 for a scheduled induction of labor following an "unremarkable prenatal course." (Compl. ¶ 6 [Doc. #1].) The admitting physician was Dr. Roland Garza ("Dr. Garza"), an employee of Brazos Valley Community Action Agency,

Inc., a federally supported community health care center. (*Id.* ¶ 8; Mot. Dismiss at 1–2 [Doc. #6]; Torres Decl., Ex. A to Mot. Dismiss ¶ 8 [Doc. #6-1].) According to Plaintiffs, Dr. Garza failed to follow proper medical protocol in performing Garcia's delivery on the morning of March 28, 2013 and in providing her with post-delivery care. (Compl. ¶¶ 11–14, 18–19.) As a result of that alleged negligence, Plaintiffs claim Garcia suffered severe bleeding, respiratory failure, cardiac failure, and acute renal failure; had to undergo an emergency hysterectomy; contracted a severe wound infection requiring additional surgeries; and now suffers from permanent kidney failure, for which she must receive multiple dialysis treatments every week in order to stay alive. (*Id.* ¶ 16.) Plaintiffs seek damages for, *inter alia*, lost income, past and future medical care, loss of society and companionship, mental anguish, pain and suffering, and loss of earning capacity. (*Id.* ¶ 20.)

The present action represents the second time Plaintiffs have brought their claims to court. The following procedural history, which in all material respects the parties do not dispute, is central to resolving the pending motion and proceeds chronologically.

a. On March 8, 2015, Plaintiffs filed their first suit in the 85th District Court of Brazos County, Texas against Dr. Garza, another physician, and the health center where the March 28, 2013 incident occurred. (Mot. Dismiss at 2.)

b. On June 3, 2015, the United States removed that case to this court (*id.*), asserting Dr. Garza's status as a federal employee under the FTCA (Not. of Removal at 1–2, *Garcia v. St. Joseph's Regional Health Center*, No. 15-CV-1493 (S.D. Tex. 2015)).[1]

---

[1] The court takes judicial notice of its own files from prior proceedings. *See State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975) (court may "take judicial notice of related proceedings and records in cases before that court"); *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (district court "clearly had the right to take notice of its own files and records").

c. On June 11, 2015, Plaintiffs mailed four administrative tort claims to the U.S. Department of Health and Human Services ("HHS"). (Compl. ¶ 10; Pls.' Admin. Claims, Ex. 1 to Torres Decl. [Doc. #6-1].)

d. On June 17, 2015, the United States filed a certification that Dr. Garza was a deemed employee of the United States and had been acting within the scope of his employment at the time of the incident. (Mot. Dismiss at 2; Cert. of Scope of Emp't, Ex. B to Mot. Dismiss [Doc. #6-1]; *see also* Torres Decl., Ex. A to Mot. Dismiss ¶ 8.) The United States simultaneously moved to substitute itself as defendant in Dr. Garza's place and to dismiss due to Plaintiffs' failure to pursue administrative remedies prior to initiating the suit. (Mot. Dismiss at 2–3.)

e. On June 22, 2015, HHS received the Plaintiffs' administrative claims. (Mot. Dismiss at 3; Torres Decl. ¶¶ 4, 6; Pls.' Admin. Claims (showing agency receipt stamps dated June 22, 2015).)

f. On October 27, 2015, this court dismissed the first action without prejudice because Plaintiffs had "failed to exhaust their administrative remedies before filing suit." (Order Granting Mot. to Subst. and Dismiss, Ex. A to Notice of Collateral Proceeding [Doc. #5-1] at 3–4.)

g. On December 28, 2015, HHS issued a final denial of Plaintiffs' administrative claims. (Torres Decl. ¶ 5; Letter Denying Pls.' Admin. Claims, Ex. 2 to Torres Decl. [Doc. #6-1].)

h. On January 4, 2016, Plaintiffs instituted this second suit.

## LEGAL STANDARDS

The United States' motion seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, summary judgment under Rule 56.

### A. Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F.Supp.2d 656 (S.D. Tex. 2010). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The ultimate question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678. A court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the

4

plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## B. Motion for Summary Judgment

A motion for summary judgment requires a court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*; *see also Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005). "[S]ummary judgment procedure is proper if the claim asserted against the defendant is barred by the applicable statute of limitations." *Ayers v. Davidson*, 285 F.2d 137, 139 (5th Cir. 1960); *see also* 10B Charles Allan Wright et al., *Federal Practice & Procedure* § 2734 (3d ed. 2015).

## ANALYSIS

The sole basis for the United States' motion is its contention that the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b), bars Plaintiffs' suit because they failed to present administrative claims to HHS within two years after their claims accrued. (*See* Mot. Dismiss at

1.) In response, Plaintiffs maintain that their claims are timely under the FTCA's savings clause, 28 U.S.C. § 2679(d)(5). (Pls.' Resp. to Mot. Dismiss at 1–7 [Doc. #8].)[2]

## A. Overview of the FTCA

"The FTCA is a waiver of sovereign immunity that allows a plaintiff to bring a civil action for damages against the [federal] [g]overnment." *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009). Section 1346(b)(1) of the FTCA provides federal district courts with

> exclusive jurisdiction of civil actions on claims against the United States, for [*inter alia*] money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "Plaintiffs may recover against the United States and its agencies under the FTCA 'in the same manner and to the same extent as a private individual under like circumstances' under substantive state law." *Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014) (quoting 28 U.S.C. § 2674).

At the same time, the FTCA limits plaintiffs' ability to bring a cause of action in court. First, the statute requires plaintiffs to present their tort claims to the appropriate federal agency before instituting suit in court. 28 U.S.C. § 2675(a); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). This "requirement of exhaustion of administrative review is a jurisdictional requisite to the filing of an action under the FTCA" and cannot be waived. *Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981). Thus, a court must dismiss a suit as premature if the plaintiff failed to first exhaust administrative remedies. *See id.* at 204 (observing that "jurisdiction must exist at

---

[2]  In the alternative, Plaintiffs argue that they are entitled to equitable tolling of § 2401(b)'s limitations period, but ask that the court defer briefing on that issue because it involves "a fact intensive, evidentiary inquiry." (Pls.' Resp. to Mot. Dismiss. at 7–8.)

the time the complaint is filed" and that staying or holding in abeyance premature claims would conflict with purpose of the exhaustion requirement).

In addition, § 2401(b) of the FTCA requires that a tort claim against the United States be presented to the appropriate federal agency "within two years after such claim accrues" and then brought to federal court "within six months after . . . final denial of the claim by the agency." 28 U.S.C. § 2401(b); *see also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1629 (2015); *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001). A claimant is required to meet both of those deadlines. *Kwai Fun Wong*, 135 S. Ct. at 1629.[3]

Notwithstanding § 2401(b), a claim will be treated as timely if it satisfies the requirements of § 2679(d)(5), which functions as a savings clause and reads:

> Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—
>
> (A)    the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
> (B)    the claim is presented to the appropriate Federal agency **within** 60 days **after** dismissal of the civil action.

28 U.S.C. § 2679(d)(5) (emphasis added). This provision ensures "that a plaintiff . . . will not be prejudiced by her failure to first file an administrative claim with the appropriate federal agency within the two-year time period." *McLaurin v. United States*, 392 F.3d 774, 782 & n.35 (5th Cir. 2004) (internal quotation marks omitted).

---

[3]    Section 2401(b) functions as an ordinary statute of limitations and so, unlike § 2675(a), is not jurisdictional in nature. *See Kwai Fun Wong*, 135 S. Ct. at 1633, 1638 (observing that provision "'reads like an ordinary, run-of-the-mill statute of limitations' spelling out a litigant's filing obligations without restricting a court's authority" and holding that its "time bars are nonjurisdictional").

## B. Analysis of § 2679(d)(5)

It is undisputed that Plaintiffs met the requirements of § 2679(d)(5)(A). Their first suit—which constitutes the "action . . . in which the United States [was] substituted as the party defendant" and which was then "dismissed for failure first to present a claim"—was filed on March 8, 2015, within the two-year period following the accrual of Garcia's claim on March 28, 2013.[4] Thus, the claims would have been timely had Plaintiffs filed them on that date. Accordingly, resolution of the United States' motion turns on whether Plaintiffs also satisfied § 2679(d)(5)(B). Specifically, the question in this case is whether Plaintiffs' presentment of their administrative claims to HHS (in June 2015) *before* the court dismissed their first suit (on October 27, 2015) met § 2679(d)(5)(B)'s requirement that the claims be "presented . . . *within* 60 days *after* dismissal of the civil action."[5] (Emphasis added.) The United States maintains that the provision's plain language obligated Plaintiffs to file their administrative claims *after* the court's dismissal; under that strict reading, the June 2015 filing was too early. (Mot. Dismiss at 9; Reply Supp. Mot. Dismiss at 1–3.) Plaintiffs argue that their claims satisfied § 2679(d)(5)(B), invoking

---

[4] "The general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury." *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). "For FTCA medical malpractice cases, however, *Kubrick* adopted a 'discovery rule' for claim accrual, under which the time starts to run when the plaintiff has the information necessary to discover 'both his injury and its cause.'" *Id.* (quoting *Kubrick*, 444 U.S. at 120). There is no dispute that Garcia knew about her injury and its cause as of March 28, 2013. It is not entirely clear whether the claims of Garcia's children and husband—which assert "loss of society and companionship" (Compl. ¶ 20; Pls.' Admin. Claims) and constitute ostensibly actionable claims for loss of consortium—accrued on the same date or at some later point. In either case, though, the first suit was filed within two years following accrual of those claims as well.

[5] The parties disagree about the exact date on which the Plaintiffs' claims were "presented" within the meaning of the FTCA. Plaintiffs state that they presented their claims to HHS on June 11, 2015, the date they sent the claims to the agency via certified mail. (Compl. ¶ 10; *see* Pls.' Admin. Claims.) The United States maintains that the operative date is June 22, 2015, the date the agency actually received the claims. (Mot. Dismiss at 3; Torres Decl. ¶ 6.) This dispute is not material here. Regardless of which date is used, Plaintiffs' claims were "presented" before dismissal of the first suit, meaning that Section 2679(d)(5)(B) will operate the same for either date.

the provision's broad purpose as a savings clause and policy considerations under the FTCA.

(Pls.' Resp. to Mot. Dismiss at 1–7.)

### 1. The Savings Clause Is Susceptible to Conflicting Textual Interpretations

The savings clause language "*within* 60 days *after* dismissal of the civil action," standing

alone, appears susceptible to both of the parties' conflicting interpretations. That is because the

word "within" has both a "bounded" meaning and a more "open-ended" meaning.[6] In a recent

decision construing a provision of the federal removal statute, 28 U.S.C. § 1446(b)(1), the United

States Court of Appeals for the First Circuit highlighted these two distinct meanings and

explained their effect on interpretation of the statutory phrase "within . . . after":

> [W]e note that "within" has various meanings. . . . When coupled with "after" in
> the context of the removal statute, those meanings would have differing
> consequences. For example, "within" could be used to signify a specific,
> circumscribed time range. *Webster's New International Dictionary* 2627 (3d
> ed. 1993) (defining "within" as "during the course of" or "at any time during"). If
> used in that way, the phrase "within 30 days after [service]" would describe a
> bounded time range, beginning with service, both before and after which a
> defendant is unable to remove. Alternatively, if the term "within" is used to mean
> "before the end of" or "not longer in time than," *id.*, then the phrase "within
> 30 days after [service]" might simply define the specific point at which a case is
> no longer removable, but allow removal at any point up until that time.

*Novak v. Bank of New York Mellon Trust Co., NA.*, 783 F.3d 910, 912-13 (1st Cir. 2015)

(internal citation omitted; brackets in original) (adopting the latter, more open-ended reading in

light of other portions of the statute and its legislative history).

As with the removal statute in *Novak*, the language of § 2679(d)(5)(B), when taken in

isolation, is indeterminate. Using the "bounded" meaning of "within," the requirement that

claims be "presented . . . within 60 days after dismissal of the civil action" sets a circumscribed

---

[6] *See, e.g.*, 21 *Oxford English Dictionary* 457 (2d ed. 1991) (defining "within" as meaning, among other things, "[i]n the limits of (a period of time); most usually, before the end of, after not more than; also, since the beginning of, not more than . . . ago; or *gen.* between the beginning and end of, in the course of, during").

time range beginning with dismissal and ending 60 days later. Under that reading, the savings clause does not apply to claims presented outside that range, whether before or after. By contrast, if the "open-ended" meaning of "within" is used, the provision sets only an end date for deeming claims timely presented. Under that reading, claims are considered timely so long as they are presented no later than the 60th day after dismissal, even if presentment occurs before dismissal.[7]

Use of the word "whenever" at the start of § 2679(d)(5)'s prefatory clause supports the open-ended reading of "within." As the prefatory clause states, the savings provision applies "[w]henever an action or proceeding . . . is dismissed." "Whenever" means "at whatever time," "no matter when," "at any or all time that," or "in any or every instance in which." *Webster's Third New International Dictionary* 2602 (1965). "[T]he word 'whenever' cannot be defined as a restrictive word." *Hobby v. Hodges*, 215 F.2d 754, 758–59 (10th Cir. 1954); *see also Mingo*

---

[7]   A few other sections of the FTCA use the phrase "within . . . after"; however, because of those provisions' differing contexts and purposes, they do not shed any significant light on the meaning of § 2679(d)(5)(B). *See Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) ("the same words, placed in different contexts, sometimes mean different things . . . identical language may convey varying content . . . even in different provisions of the same statute"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 10 (2011) (noting that statute's other uses of the word "filed" failed to resolve its meaning in portion of statute under consideration).

For example, Section 2675(a), which contains the FTCA requirement for exhaustion of administrative remedies, states that "[t]he failure of an agency to make final disposition of a claim *within six months after* it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a) (emphasis added). This use is most consistent with the "bounded" meaning of "within," but only because it would be unreasonable for an agency to finally dispose of a claim *before* it is filed.

Section 2401 uses the "within . . . after" phrase twice. Subsection (a) states that suits against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Subsection (b), as already noted, bars tort claims not presented to an agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). As explained in note 4, *supra*, accrual under the FTCA takes place either at the time of injury or, in medical malpractice cases, when the plaintiff has the information necessary to discover both the injury and its cause. Given that formulation, there would be few, if any, situations where a complaint or claim could be filed pre-accrual.

Section 2679(c), which relates to the process by which the United States may substitute itself for government employees sued for acts taken in the scope of their employment, states that "[t]he employee against whom such civil action or proceeding is brought shall deliver *within such time after* date of service or knowledge of service as determined by the Attorney General, all such process served upon him or an attested true copy thereof to" certain designated persons. 28 U.S.C. § 2679(c) (emphasis added). Because employees would be hard-pressed to deliver such process *before* service had taken place, the "bounded" meaning of "within" appears to be the more appropriate reading of that provision.

*Logan Coal Co. v. EPA*, 714 F.3d 608, 613 (D.C. Cir. 2013) (By "[u]sing the expansive conjunction 'whenever,' the Congress made plain its intent to grant the [agency] authority to [act] at *any* time." (emphasis in original) (citing 20 *Oxford English Dictionary* 210 (2d ed. 1989) (defining "whenever," used in "a qualifying (conditional) clause," as: "At whatever time, no matter when."))). Such expansive wording indicates that § 2679(d)(5) was intended to apply "in every instance" in which a claim is dismissed due to a plaintiff's failure to first present an administrative claim, "no matter when" that dismissal occurs. This interpretation is most consistent with reading § 2679(d)(5)(B) to widely encompass claims regardless of whether dismissal occurs before or after their presentment to the appropriate agency.

### 2. The Savings Clause's Purpose and Related Policies Make Its Meaning Clear

The proper meaning of § 2679(d)(5)(B) becomes apparent when considered in conjunction with the provision's purpose and related policy concerns. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) (interpretation of statutory phrase "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis" (internal quotation marks omitted) (quoting *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006))).

Congress enacted the current version of § 2679(d)(5) as part of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the "Westfall Act"), which amended the FTCA in significant respects. *See generally* Ugo Colella & Adam Bain, *Revisiting Equitable Tolling and the Federal Tort Claims Act: Putting the Legislative History in Proper Perspective*, 31 SETON HALL L. REV. 174, 202-05 & n.157 (2000) (providing overview of Westfall Act's history and provisions); Daniel A. Morris, *Federal Employees' Liability Since the Federal Employees Liability Reform & Tort Compensation Act of 1988 (the Westfall Act)*, 25

CREIGHTON L. REV. 73 (1991) (same). "The basic purpose of the Westfall Act was to protect federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of federal employees with an appropriate remedy against the United States." *Mitchell v. Carlson*, 896 F.2d 128, 134 (5th Cir. 1990) (internal quotation marks omitted). To that end, the Westfall Act created "a statutory mechanism through which tort actions against federal employees would be transformed into actions against the federal government to be channelled through the [FTCA]." *Springer v. Bryant*, 897 F.2d 1085, 1087 (11th Cir. 1990) (describing Westfall Act's certification, substitution, and exclusivity provisions).

Section 2679(d)(5) was designed as part of that broader framework, and was particularly meant to "remedy the perceived unfairness of barring plaintiffs who found out too late that the United States was the proper party-defendant." Colella & Bain, *supra*, at 203–04 (noting that this had been a problem since the 1966 enactment of the mandatory administrative-exhaustion requirement); *see also Mittleman v. United States*, 104 F.3d 410, 412 (D.C. Cir. 1997) ("Congress recognized that plaintiffs might suppose their claims to be against an individual government employee (as indeed they would still be if the employee had not been acting within the scope of his employment), and thus might fail to timely present their claims to the agency, so it fashioned special rules to account for the possibility."). The Fifth Circuit has observed that § 2679(d)(5) was aimed at ensuring "that a plaintiff . . . will not be prejudiced by her failure to first file an administrative claim with the appropriate federal agency within the [FTCA's] two-year time period." *McLaurin v. United States*, 392 F.3d 774, 782 & n.35 (5th Cir. 2004) (internal quotation marks omitted).

This remedial purpose warrants a generous reading of Section 2679(d)(5)'s scope. The United States District Court for the District of Puerto Rico's decision in *Faura Cirino v. United States*, 210 F. Supp. 2d 46 (D.P.R. 2002), is particularly instructive. In *Faura Cirino*, the court was called upon to apply § 2679(d)(5) in a similar procedural context. After determining that the plaintiffs' medical-negligence-based wrongful death action under the FTCA had accrued on August 8, 1998, the court summarized the history of subsequent proceedings as follows:

> Plaintiffs filed their claim in the [Puerto Rico] Commonwealth court on November 5, 1999.  This filing is within two years of the accrual of the cause of action . . . . [The defendant health care institution] moved for the dismissal of the complaint on April 27, 2000, alleging a lack of jurisdiction because they are a federal institution subject to liability only under the Federal Tort Claims Act. Upon the realization that [the defendant] is indeed a federal institution, and its employees, federal employees, [p]laintiffs moved for a dismissal without prejudice of the Commonwealth claim on May 25, 2000. Plaintiffs next filed a proper administrative claim on September 13, 2000.  The Commonwealth court dismissed the action against [the defendant] on January 16, 2001.

210 F. Supp. 2d at 53–54 (footnote omitted). The plaintiffs then filed their FTCA suit in federal court on July 9, 2001. *Id.* at 49.

In holding that the plaintiffs' suit was timely under § 2679(d)(5), despite their having filed their administrative claim *before* dismissal of their initial action, the court in *Faura Cirino* explained that "[t]he purpose of [the savings clause] is to provide protection to plaintiffs that are diligently pursuing their claims, but are unaware that the proper defendant is the United States." *Id.* at 53. Once the plaintiffs realized that the defendants "were federal actors, they began the procedural steps necessary to file a FTCA suit" in federal court. *Id.* at 54. Thus, the court concluded, the plaintiffs "should not be penalized for their diligence in filing the administrative claim before the [court] had dismissed the first case." *Id.*; *see also Estate of Bumann v. United States*, No. 12-CV-4031-DEO, 2012 WL 4434712, at *4 (N.D. Iowa Sept. 24, 2012) (holding that § 2679(d)(5) covers plaintiffs "who, though they knew they were injured by a [g]overnment

employee, did not know the [FTCA] limited any cause of action they may have to the [f]ederal [g]overnment").[8]

Here, the Plaintiffs were clearly conscientious in pursuing their claims.[9] First, they filed their initial suit within two years following the accrual of Garcia's claim. Then, once the United States sought removal based on Dr. Garza's status as a federal employee, and before the United States had even filed a certification regarding his scope of employment, Plaintiffs sent their administrative claims to HHS. *Cf. Huertero v. United States*, 601 F. App'x 169, 172, 172–73 (3d Cir. 2015) (stating that § 2679(d)(5) "was not yet implicated" when plaintiffs filed their first claim because the government had not yet substituted itself as a defendant, the case had not yet been removed to federal court, the government had not yet moved to dismiss, and dismissal had not yet occurred). It is true that they could have waited until the court dismissed their initial suit on December 28, 2015 and presented their claims afterwards. To bar their claims on that basis, however, would "penalize[] [them] for their diligence." *Faura Cirino*, 210 F. Supp. 2d at 54. It would be particularly unfair to do so given the less-than-obvious federal presence in cases involving federally funded health care providers, and the fact that the United States itself took several months to certify that Dr. Garza had been acting within the scope of his employment. *See* Richard W. Bourne, *A Day Late, A Dollar Short: Opening A Governmental Snare Which Tricks Poor Victims Out of Medical Malpractice Claims*, 62 U. PITT. L. REV. 87, 105–08 (2000) (noting that in "cases against subsidized private health centers and clinicians, the federal employment

---

[8]  The court does not adopt any suggestion in *Faura Cirino* or *Bumann* that *only* plaintiffs who were diligent and/or ignorant of the FTCA's limitations are entitled to § 2679(d)(5)'s relief. Where such factors are present, as in this case, they merely confirm the appropriateness of applying the savings clause; the statute's language and purpose, however, remain broad.

[9]  This observation is based solely on undisputed facts regarding the dates on which Plaintiffs took various steps in pursuit of their claims.

relationship is an out-and-out fiction"); *Bumann*, 2012 WL 4434712, at *4 (noting that it would be "unfair" to bar plaintiff's claim when it had taken the United States several months to certify that the employee had been acting within the scope of his employment and when even the plaintiff's own competent counsel had been "caught unaware of the intricacies of the FTCA.").[10]

Policy considerations also support applying § 2679(d)(5) in this manner. First, requiring individuals in Plaintiffs' position to await dismissal before presenting their claims to an agency "would serve no useful purpose." *Brown v. United States*, 838 F.2d 1157, 1161 (11th Cir. 1988) (holding that representative of victim's estate was not required to file a new wrongful death claim with agency after victim, who had filed personal injury claim, died; "[r]equiring the [representative] to exhaust the administrative claim procedure again would serve no useful purpose"); *see also Blair v. IRS*, 304 F.3d 861, 868 (9th Cir. 2002) ("The claim presentation requirement of the FTCA is designed to ensure that compensation is provided in a fair and equitable manner, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits." (internal quotation marks omitted)). "It is unlikely that the agency would . . . act any differently." *Brown*, 838 F.2d at 1161.

Second, this reading of § 2679(d)(5)(B) is consistent with, and in fact furthers, the FTCA's administrative exhaustion requirement. As the Fifth Circuit has stated, Congress enacted

---

[10]   In maintaining that Plaintiffs "have not alleged any grounds for equitable tolling," the United States asserts that they "offer nothing to show that they actively and diligently pursued their judicial remedies." (Mot. Dismiss at 10.) Clearly, Plaintiffs would bear the burden of showing the appropriateness of equitable tolling. *See Credit Suisse Sec. (USA) LLC v. Simmonds*,132 S. Ct. 1414, 1419 (2012) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." (internal quotation marks and italics omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). That burden, however, is inapplicable to the question of what § 2679(d)(5) provides—a statutory construction question antecedent to any equitable tolling considerations. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) ("[e]quitable tolling, if available, can rescue a claim *otherwise barred as untimely* by a statute of limitations" (emphasis added)); *McLaurin v. United States*, 392 F.3d 774, 782 & n.33 (5th Cir. 2004) (rejecting equitable considerations because § 2679(d)(5) provided statutory mechanism that would render plaintiff's claim timely).

15

that requirement "to ease court congestion and avoid unnecessary litigation, while making it possible for the [g]overnment to expedite the fair settlement of tort claims asserted against the United States." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994) (internal quotation marks omitted); *see also Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 449 (5th Cir. 2014); *Gregory v. Mitchell*, 634 F.2d at 204.

Interpreting § 2679(d)(5)(B) to save claims filed prior to court dismissal of a premature suit would allow the government to more promptly investigate claims and, where appropriate, attempt to reach settlement. If settled prior to court dismissal (a not unreasonable prospect given the many months it often takes busy district courts to issue a decision), the court would be spared unnecessary work in disposing of the matter. In contrast, requiring plaintiffs to await final court dismissal of their premature suits before filing administrative claims would disincentivize prompt settlements, since there would be no valid claim for the agency to investigate or settle until after dismissal had occurred. That, in turn, would burden the courts with the task of reviewing and dismissing premature suits that the parties might have otherwise settled themselves. *See Odin v. United States*, 656 F.2d 798, 806 n.30 (D.C. Cir. 1981) ("Claimants are interested in receiving full compensation for their injuries in the shortest time possible, and if an agency grants a claimant's request in full, the claimant will normally accept the agency's offer.").

Ultimately, the United States' motion rests on a canon of statutory construction stating that waivers of the government's sovereign immunity must be strictly construed and "any ambiguities . . . be resolved in favor of the sovereign." *McLaurin*, 392 F.3d at 780. (Mot.

Dismiss at 2; Reply Supp. Mot. Dismiss at 3.)[11] But that canon is inapplicable here. As has been shown, when the provision's language is considered alongside its purpose, it unambiguously supports allowing the Plaintiffs' suit to proceed. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (the "plainness or ambiguity" of a statute's language can be determined by "the specific context in which that language is used, and the broader context of the statute as a whole"). Moreover, an overly strict reading of § 2679(d)(5)(B) would be contrary to the Supreme Court's admonition that courts not "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117-18, (1979) (citations omitted). Indeed, the Court has observed that the "strict construction" canon is "unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute, which waives the [g]overnment's immunity from suit in sweeping language." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (internal quotation marks and citations omitted) (citing *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984); *United States v. Yellow Cab Co.*, 340 U.S. 543, 547 (1951)).

Thus, the court concludes that, as a matter of law, Plaintiffs' claims were timely filed via operation of § 2679(d)(5). Because the FTCA's two-year statute of limitations does not bar Plaintiffs' complaint, dismissal under Rule 12(b)(6) is inappropriate. In addition, because the United States has failed to show that it is entitled to judgment as a matter of law, summary judgment is unwarranted. Given this recommended disposition, consideration of the equitable tolling issue is unnecessary.

---

[11] While the United States also cites several cases in support of its motion, including some from this district, none dealt with the issue now before the court. (*See* Mot. Dismiss at 8–9; Reply Supp. Mot. Dismiss at 2–3.) Most simply quote the statutory language.

## CONCLUSION

Based on the foregoing, the court **RECOMMENDS** that the United States' Motion to Dismiss, or for Summary Judgment be **DENIED**. The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

**SIGNED** at Houston, Texas on April 25, 2016.

**DENA HANOVICE PALERMO**
**UNITED STATES MAGISTRATE JUDGE**